UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM S. JOHNSON and JANICE M.
JOHNSON,

        Plaintiffs,

        v.

OCWEN LOAN SERVICING, LLC, and
DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE FOR ARGENT
SECURITIES, INC., ASSET-BACKED
PASS-THROUGH CERTIFICATES, SERIES
2003-W6,

        Defendants.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Civil Action No. 17-cv-11944-ADB

## MEMORANDUM AND ORDER
## ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BURROUGHS, D.J.

      On September 20, 2017, Plaintiffs William S. Johnson and Janice M. Johnson

(collectively "Plaintiffs") filed this action for damages, alleging that the purported holder of their

mortgage, Defendant Deutsche Bank National Trust Company, as trustee for Argent Securities,

Inc., Asset-Backed Pass-Through Certificates, Series 2003-W6 ("the ASI 2003-W6 Trustee")

and their loan servicer, Ocwen Loan Servicing LLC ("Ocwen Loan"), lacked the authority to

foreclose on their property and failed to comply with certain foreclosure notice obligations.

Currently pending before the Court is Defendants' motion for summary judgment. [ECF No.

36]. For the reasons set forth below, the motion, [ECF No. 36], is <u>GRANTED</u> in part and

<u>DENIED</u> in part.

# I. BACKGROUND

Plaintiffs owned property at 12 Osgood Street in Salem, Massachusetts. On September 16, 2003, Plaintiffs refinanced their home with a $200,000 loan from Argent Mortgage Company, LLC ("Argent Mortgage"), [ECF No. 37-3 at 2], which was secured by a mortgage recorded with the Essex South Registry of Deeds ("the Mortgage"), [ECF No. 37-4].

Argent Mortgage securitized the Plaintiffs' $200,000 mortgage as part of a pool of mortgages that was securitized in the ASI 2003-W6 Trust on November 1, 2003, and filed a securitization and Mortgage Loan Schedule with the United States Securities and Exchange Commission ("SEC"). [ECF Nos. 37-6, 37-7, 37-8]. According to the Form 8K associated with that securitization, "a series of certificates, entitled Argent Securities Inc. Asset-Backed Pass-Through Certificates, Series 2003-W6 . . . were issued pursuant to a pooling and servicing agreement, dated as of November 1, 2003[,] . . . among Argent Securities Inc. as depositor . . . and Deutsche Bank National Trust Company as trustee . . . ." [ECF No. 37-6 at 4].

On December 5, 2008, Argent Mortgage executed a limited power of attorney in favor of Citi Residential Lending Inc. ("Citi Residential"), which allowed Citi Residential to perform "[t]he full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note"; the "*assignment of any Mortgage or Deed of Trust and the related Mortgage Note*"; and the "full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note." [ECF No. 37-9 at 2–3 (emphasis added)].

On January 15, 2009, Citi Residential assigned the Mortgage to the ASI 2003 W-6 Trustee.  [ECF No. 37-9 at 2].  The assignment was recorded with the Essex South Registry of Deeds.[1]  [Id.].[2]  On April 16, 2010, the ASI 2003 W-6 Trustee assigned the Mortgage to Deutsche Bank National Trust Company, as Trustee in trust for the benefit of the Certificateholders for Argent Securities Trust 2003-W6, Asset-Backed Pass-Through Certificates, Series 2003-W6 ("the AST 2003 W-6 Trustee").[3]  [ECF No. 37-11 at 2].  That assignment of the Mortgage was also recorded with the Essex South Registry of Deeds on April 27, 2010.  [Id.].

---

[1] That assignment provided that "CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR ARGENT MORTGAGE COMPANY, LLC, WHOSE ADDRESS IS 10801 E. 6TH STREET, RANCHO CUCAMONGA, CA 91730, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR, ARGENT SECURITIES INC, ASSET-BASED PASS-THROUGH CERTIFICATES, SERIES 2003-W6, UNDER THE POOLING AND SERVICING AGREEMENT DATED NOVEMBER 1, 2003, WHOSE ADDRESS IS 1761 EAST ST. ANDREW PLACE, SANTA ANA, CA 92705-4934, (ASSIGNEE) . . . ."  [ECF No. 37-10 at 2].

[2] Defendants argue that the January 2009 assignment of the Mortgage was invalid "due to the error in execution whereby rather than having the assignment being given by Argent, the holder of the mortgage, through its attorney-in-fact[,] it instead had the non-holder attorney-in-fact granting the assignment."  [ECF No. 37 at 6].

[3] That assignment provided that it was made "from Deutsche Bank National Trust Company, as Trustee for, Argent Securities Inc. Asset-Backed Pass-Through Certificates, Series 2003-W6, Under the Pooling and Servicing Agreement Dated November 1, 2003, whose address is 1761 East St. Andrew Place, Santa Ana, CA 92705 ("Assignor") to Deutsche Bank National Trust Company, as Trustee in trust for the benefit of the Certificateholders for Argent Securities Trust 2003-W6, Asset-Backed Pass-Through Certificates, Series 2003-W6, whose address is 1761 East St. Andrew Place, Santa Ana, CA 92705 ("Assignee")."  [ECF No. 37-11 at 2].

Plaintiffs eventually defaulted on their mortgage. [ECF No. 37-14 at 2]. On August 14, 2014, Ocwen Loan sent Plaintiffs a combined 150-Day Right to Cure Notice and a Notice of Default by both first class mail and certified mail. [Id.]. That notice explained that Ocwen Loan was acting as "servicer for Deutsche Bank National Trust Company, as Trustee for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2003-W6," the ASI 2003 W-6 Trustee, and that the Mortgage originated with Argent Mortgage. [Id.].

On February 3, 2015, in communication with Plaintiffs' counsel, Ocwen Loan explained that the Mortgage was held by the ASI 2003-W6 Trustee. [ECF No. 47-6 at 4]. According to Ocwen Loan, foreclosure proceedings were initiated on the property on January 28, 2015. [ECF No. 47-6 at 3].

On September 30, 2015, Citi Residential, acting as attorney in fact, once again executed an assignment of the Mortgage from Argent Mortgage to the ASI 2003 W-6 Trustee, [ECF No. 37-12], despite the fact that the Mortgage had already been assigned to the AST 2003-W6 Trustee in April 2010, [ECF No. 37-11], and that Ocwen Loan had represented in February 2015 that the Mortgage was held by ASI 2003-W6, [ECF No. 47-6 at 4]. This assignment was recorded with the Essex South Registry of Deeds on October 19, 2015.[4] [ECF No. 37-11].

---

[4] That assignment provided that "ARGENT MORTGAGE COMPANY, L.L.C. BY ITS ATTORNEY IN FACT CITI RESIDENTIAL LENDING INC at C/O OCWEN LOAN SERVICING, LLC, 1661 WORTHINGTON DR, STE 100, WEST PALM BEACH FL 33409" was assigning the mortgage to "DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ARGENT SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W6 at C/O OCWEN LOAN SERVICING, LLC, 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL 33409 . . . ." [ECF No. 37-12 at 2].

On November 23, 2015, Ocwen Loan executed and filed a mortgagee affidavit with the Land Court. [ECF No. 37-16 at 2]. That affidavit, signed under the pains and penalties of perjury, explained that Ocwen Loan was acting as servicer for the ASI 2003-W6 Trustee. [Id.]. The affidavit indicated that notice had been given to Plaintiffs "in compliance with Massachusetts General Laws, Chapter 244, Section 35A . . . ." [Id.].

On December 3, 2015, Defendants sent Plaintiffs and their attorney a notice of acceleration of the mortgage debt by certified mail. [ECF No. 37-18]. The notice informed Plaintiffs that Ocwen Loan was acting as servicer for the ASI 2003-W6 Trustee, "the present holder of [the] mortgage to Argent Mortgage Company, LLC, dated September 16, 2003 in the original principal amount of $200,000.00." [ECF No. 37-18 at 2]. On January 14, 2016, Ocwen Loan executed affidavits regarding compliance with Massachusetts General Laws Chapter 244, § 35B, [ECF No. 37-19], and § 35C, [ECF No. 37-20]. Both of those affidavits of compliance were also recorded with the Essex South Registry of Deeds. [ECF No. 37-9 at 2; ECF No. 37-20 at 2].

On June 16, 2016, deficiency notices and notices of scheduled sale were sent to Plaintiffs and their attorney. [ECF No. 37-21]. Plaintiffs filed a complaint against the ASI 2003-W6 Trustee in Massachusetts Superior Court on July 19, 2016, and sought a temporary restraining order to stop the foreclosure sale. See Johnson v. Deutsche Bank Nat'l Tr. Co., No. 16-cv-11654, ECF No. 1-3 (D. Mass. Aug. 15, 2015). The state court denied the motion for the temporary restraining order, and the ASI 2003-W6 Trustee removed the action to federal court. See Johnson v. Deutsche Bank Nat'l Tr. Co., No. 16-cv-11654, ECF Nos. 1, 1-6, 6 (D. Mass. Aug. 22, 2016). On March 10, 2017, the federal court dismissed the case for lack of prosecution

after Plaintiffs failed to respond to an order to show cause.  Johnson v. Deutsche Bank Nat'l Tr. Co., No. 16-cv-11654, ECF No. 22. (D. Mass. Mar. 10, 2017).

After the Plaintiffs' first case was dismissed, the ASI 2003-W6 Trustee resumed the foreclosure process.  Notices of scheduled sale and deficiency were once again sent on August 31, 2017, by certified mail.  [ECF No. 37-22].  The notice of foreclosure was likewise published for three consecutive weeks on August 25, September 1, and September 8, 2017.  [ECF No. 37-23 at 2].  Defendants then recorded the foreclosure deed and affidavit of sale with the Registry of Deeds.  [ECF No. 37-23].  On September 22, 2017, Deutsche Bank National Trust Company conducted a foreclosure sale and was the highest bidder.  [ECF No. 37-24 at 8].

In sum, the record reflects the following history of alleged assignments or transfers of the Mortgage: (1) on or about November 1, 2003, the original mortgagee, Argent Mortgage, assigned the Mortgage to the ASI 2003-W6 Trustee as part of a pool of mortgages that was securitized in the ASI 2003-W6 trust; (2) on or about January 15, 2009, Argent Mortgage assigned the Mortgage to the ASI 2003-W6 Trustee;[5] (3) on or about April 16, 2010, the ASI 2003-W6 Trustee assigned the Mortgage to Deutsche Bank National Trust Company, acting as the trustee for a different trust, AST 2003-W6; and (4) on or about September 25, 2015, Argent Mortgage assigned the Mortgage back to the ASI 2003-W6 Trustee.

_____

[5] It is unclear from the record whether this recorded assignment was intended to merely confirm the November 1, 2003 assignment through the securitization or if it was done for some other reason.

## II.    PROCEDURAL HISTORY

Plaintiffs first filed this case, their second lawsuit related to the matter, in Massachusetts Superior Court on September 20, 2017.  [ECF No. 1-3 at 14–15].  Defendants removed to federal court, [ECF No. 1], and moved to dismiss the case on November 3, 2017, [ECF No. 7].  After Plaintiffs finally responded, [ECF No. 11], the Court granted the motion to dismiss in part, but allowed Plaintiffs to amend the complaint, [ECF No. 12].

Plaintiffs filed their amended complaint ("the Complaint") on July 25, 2018.  [ECF No. 15].  After discovery ended, [ECF No. 30], Defendants moved for summary judgment on June 6, 2019, [ECF No. 36].  After a number of extensions of time, Plaintiffs filed their response on September 10, 2019, which was one day late.  [ECF Nos. 43, 44, 45, 46, 47].

## III.    LEGAL STANDARD

The Court will not grant Defendants' motion for summary judgment based solely on Plaintiffs' failure to file a timely response.  See De La Vega v. San Juan Star, Inc., 377 F.3d 111, 116 (1st Cir. 2004) (finding that district court erred as a matter of law when it granted a defendant's motion for summary judgment as a sanction for the plaintiff's failure to file a timely response).

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).  "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1,

6 (1st Cir. 2003) (citation omitted). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted). By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. One Parcel of Real Prop. (Great Harbor Neck, New Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). "To succeed in showing that there is no genuine dispute of material fact," the moving party must "'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).

Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, N.H., 303 F.3d 91, 94 (1st Cir. 2002) (internal quotations and citation omitted). That is, the nonmoving party must set forth specific, material facts showing that there is a genuine disagreement as to some material fact. One Parcel of Real Prop., 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard,

645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material[,]" <u>Gomez v. Stop & Shop Supermarket Co.</u>, 670 F.3d 395, 396–97 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation." <u>Cochran</u>, 328 F.3d at 6 (quoting <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990)).

## IV.  DISCUSSION

Plaintiffs bring claims for fraud (Count I), breach of contract (Count II), violation of Chapter 93A (Count III), violation of Chapter 244, § 14 (Count IV), violation of Chapters 244, §§ 35B and 35C (Count V), and perjury (Count VI), all of which are premised on the allegation that the ASI 2003-W6 Trustee did not hold the Mortgage at the time of the foreclosure and therefore lacked standing to exercise the power of sale.

### A.  Violation of M.G.L. ch. 244, § 14 Against the ASI 2003-W6 Trustee (Count IV)

Plaintiffs claim that the ASI 2003-W6 Trustee's foreclosure of their home violated Chapter 244, § 14 because it was not "the mortgagee or person having estate in the land mortgaged, or a person authorized by the power of sale," as the Mortgage had previously been assigned to the AST 2003-W6 Trustee.

Massachusetts does not require that a mortgage holder obtain judicial authorization to foreclose on a mortgaged property. Mass. Gen. Laws ch. 183, § 21; Mass. Gen. Laws ch. 244, § 14. Instead,

> upon any default in the performance or observance of the foregoing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises . . . by public auction on or near the premises then subject to the mortgage, . . . first complying with the terms of the mortgage and

with the statutes relating to the foreclosure of mortgages by the exercise of power of sale, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity.

Mass. Gen. Laws ch. 183, § 21. Pursuant to Chapter 244, § 14, a foreclosing entity "must hold both the mortgage and the underlying note at the time that [it] provides statutory notice of foreclosure . . . ." Matt v. HSBC Bank, 968 F. Supp. 2d 351, 357 (D. Mass. 2013) (citing Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1124–31 (Mass. 2012)). "Even where there is a dispute as to whether the mortgagor was in default or whether the party claiming to be the mortgage holder is the true mortgage holder, the foreclosure goes forward unless the mortgagor files an action and obtains a court order enjoining the foreclosure." U.S. Bank Nat. Ass'n v. Ibanez, 941 N.E. 2d 40, 49 (Mass. 2011) (citation omitted).

Because Massachusetts does not require judicial authorization to foreclose, courts must "adhere to the familiar rule that 'one who sells under a power [of sale] must follow strictly its terms. If he fails to do so[,] there is no valid execution of the power, and the sale is wholly void." Id. at 49–50 (quoting Moore v. Dick, 72 N.E. 967, 968 (Mass. 1905). "Because only a present holder of the mortgage is authorized to foreclose on the mortgaged property, and because the mortgagor is entitled to know who is foreclosing and selling the property, the failure to identify the holder of the mortgage in the notice of sale may render the notice defective and the foreclosure sale void." Id. at 50.

A complete chain of the recorded assignments of the mortgage linking the record holder to the foreclosing entity may establish standing to foreclose, or, as also relevant here, "[w]here a pool of mortgages is assigned to a securitized trust, the executed agreement that assigns the pool

of mortgages, with a schedule of the pooled mortgage loans that clearly and specifically identifies the mortgage at issue as among those assigned, may suffice to establish the [securitized trust's] trustee as the mortgage holder." Id. at 53.

No sale can foreclose a mortgage unless (1) before the sale "notice of such sale has been published once in each of [three] successive weeks," the first publication of which must be at least twenty-one days before the sale; (2) notice of the sale has been sent by registered mail to the owner at least fourteen days before the sale; and (3) a copy of the notice has been sent at least fourteen days before the sale to all "persons of record" holding interest in the property as of thirty days before the sale. Mass. Gen. Laws ch. 244, § 14. After the sale, the person selling must record a copy of the forfeiture notice as well as an affidavit in the registry of deeds. Id. § 15.

Therefore, for summary judgment to be appropriate, Defendants must demonstrate that they had authority to foreclose under the power of sale and show their compliance with the statutory requirements. Defendants only had the authority to exercise the power of sale if they were the assignees of the mortgage at the time of the foreclosure notice and sale. Defendants argue that they complied with these requirements by recording the Foreclosure Deed and Affidavit of Sale with the Essex County Registry of Deeds. [ECF No. 37 at 14]. Plaintiffs assert that the foreclosing entity, the ASI 2003-W6 Trustee, did not hold the mortgage at the time of the notice and sale. [ECF No. 47 at 12].

Defendants have failed to demonstrate that there is no dispute of material fact concerning whether the ASI 2003-W6 Trustee actually held the Mortgage at the time of foreclosure. The Mortgage may have been assigned to the ASI 2003-W6 Trustee in November 2003 as part of the

2003 securitization of the pooled mortgage loans.  The Mortgage was then transferred to the ASI

2003-W6 Trustee in January 2009 and subsequently assigned to the AST 2003-W6 Trustee in

April 2010.  Therefore, Argent seemingly did not have the authority to once again assign the

Mortgage to the ASI 2003-W6 Trustee in September 2015.  Defendants argue that, in spite of the

previous assignments and the fact that the ASI 2003-W6 Trustee may not have held the mortgage

at the time of foreclosure, summary judgment is appropriate for two reasons.

First, Defendants assert that the forfeiture was legitimate because they complied with the

requirements of Chapter 183, § 54B.  That section provides that an affidavit

> executed before a notary public, justice of the peace or other officer entitled by law
> to acknowledge instruments, whether executed <u>within</u> or without the
> commonwealth, by *a person purporting to hold the position of* . . . vice president, .
> . . secretary, . . . or other similar office or position, including assistant to any such
> office or position, *of the entity holding such mortgage*, or otherwise purporting to
> be an authorized signatory for such entity . . . shall be binding upon such entity and
> shall be entitled to be recorded, and no vote of the entity affirming such authority
> shall be required to permit recorded.

Mass. Gen. Laws ch. 183, § 54B (emphasis added).  Therefore, the statute allows someone

"purporting to hold" a specific position with the mortgagee to assign the mortgage.  <u>See, e.g.</u>,

<u>Wilson v. HSBC Mortg. Servs., Inc.</u>, 744 F.3d 1, 13 (1st Cir. 2014) (finding that vice president

of MERS could assign a mortgage because she purported to execute the assignment pursuant to

her authority as vice president); <u>Adao v. Fed. Nat'l Mortg. Ass'n</u>, 84 Mass. App. Ct. 1121 (2013)

("Chase Bank, through its Vice President, in fact signed the assignment and is bound by it.").

Defendants claim that the statute only requires that the affidavit be executed by someone

purporting to be with the entity holding the mortgage.  [ECF No. 37 at 13–14].  This

misinterprets the statute, which anticipates someone "purporting to hold" a specific position, not

"purporting to" work for the entity holding the mortgage. See Mass. Gen. Laws ch. 183, § 54B. The statute does not allow someone purporting to hold the mortgage to assign that mortgage.

Second, Defendants argue that the January 2009 assignment of the Mortgage from Argent Mortgage to the ASI 2003-W6 Trustee by Citi Residential, acting as attorney in fact, was defective, such that any subsequent assignment was also defective. [ECF No. 37 at 7]. In filing their motion to dismiss, Defendants had previously "assume[d] for sake of argument that the first Assignment of Mortgage was invalid due to a defective acknowledgement." [ECF No. 8 at 12]. The Court rejected that argument and found that Defendants failed to "explain the nature of the acknowledgment, the manner in which it was purportedly defective, or on what basis the alleged defect rendered the assignment invalid." [ECF No. 12 at 6 n.3]. Further, the Court observed that "if the Mortgage was properly securitized (as Defendants assert), the ASI 2003-W6 Trustee may have held the Mortgage in April 2010 regardless of the validity of the January 2009 assignment." [Id.].

Now, Defendants once again assert, "for the purposes of this motion only," [ECF No. 37 at 18], that the January 2009 "assignment was not effective due to the error on execution whereby rather than having the assignment being given by Argent, the holder of the mortgage, through its attorney-in-fact it instead had the non-holder attorney-in-fact granting the assignment." [Id. at 6].[6] Therefore, Defendants argue, because the January 2009 assignment to

---

[6] Defendants' argument is also inconsistent. On the one hand, Defendants argue that the January 2009 assignment from Argent Mortgage to the ASI 2003-W6 Trustee was ineffective because Citi Residential was without authority to assign the mortgage, though Citi Residential purported to have authority to assign the mortgage as attorney in fact. On the other hand, Defendants argue that the eventual foreclosure was effective because the ASI 2003-W6 Trustee purported to hold the mortgage at the time of foreclosure.

ASI 2003-W6 Trustee was ineffective, the April 2010 assignment to AST 2003-W6 Trustee was likewise ineffective. [Id. at 7 n.3]. Defendants still fail to explain, and the Court cannot discern, the manner in which the acknowledgment was purportedly defective. Therefore, summary judgment is denied as to Count IV, violation of Chapter 244, § 14.

### B.  Fraud Against Both Defendants (Count I)

In Count I, Plaintiffs maintain that Defendants engaged in fraud by claiming ownership of the Mortgage. [ECF No. 15 at 16]. In Massachusetts, to state a claim of fraud a plaintiff must allege "(1) that the statement was knowingly false; (2) that [defendants] made the false statement with the intent to deceive; (3) that the statement was material to the plaintiffs' decision . . . ; (4) that the plaintiffs reasonably relied on the statement; and (5) that the plaintiffs were injured as a result of their reliance." Juárez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 279 (1st Cir. 2013) (quoting Doyle v. Hasbro, Inc.,103 F.3d 186, 193 (1st Cir.1996)). Under Federal Rule of Civil Procedure 9(b), plaintiffs alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The specificity requirement applies only to the "particulars of the allegedly misleading statement itself . . . ." Rodi v. Southern N.E. Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004) (citation omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The "complaint must, therefore, include specifics about 'the time, place, and content of the alleged false representations.'" Juárez, 708 F.3d at 279−80 (quoting U.S. ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 731 (1st Cir. 2007), overruled on other grounds by Allison Engine v. United States ex. rel. Sanders, 553 U.S. 662 (2008)).

14

Plaintiffs claim that the 2015 assignment of the Mortgage from Argent Mortgage to the ASI 2003-W6 Trustee was fraudulent because the Defendants knew that Argent Mortgage did not have any interest in the Mortgage, which had already been transferred to the ASI 2003-W6 Trustee in January 2009 and then to the AST 2003-W6 Trustee in April 2010. [ECF No. 15 at 16]. Plaintiffs argue that the statements by Defendants in which they claimed ownership of the mortgage were made with an intent to deceive because the ASI 2003-W6 Trustee knew that it did not have an interest in the mortgage, which it had already assigned to a different entity. [Id.]. Plaintiffs say that they then relied on the representation by hiring counsel and attempting to secure alternative financing to stop the foreclosure and were then injured as a result of the fraud because their home was foreclosed on without legal authority. [ECF No. 47 at 20]. Defendants' conclusory argument that "Plaintiffs' Complaint fails to meet the heightened pleadings standard" is insufficient to warrant summary judgment. [ECF No. 37 at 11]. Plaintiffs have sufficiently stated "the who, what, where, and when of the allegedly false or fraudulent representation." Rodi, 389 F.3d at 15 (quoting Alternative Sys. Concepts, Inc. v. Synopsis, Inc., 374 F.3d 23, 29 (1st Cir. 2004)). Summary judgment is therefore denied as to Count I.

### C.    Breach of Contract Against Defendant Ocwen Loan (Count II)

Defendants next argue that Count II, the breach of contract claim, must be dismissed as against Ocwen Loan.[7] The Court previously dismissed the claim against Ocwen Loan without

---

[7] Plaintiffs originally brought a breach of contract claim against both Defendants. [ECF No. 103 at 9–13]. In its Order on Defendants' motion to dismiss, the Court denied the motion to dismiss as against the ASI 2003-W6 Trustee, [ECF No. 12 at 6], but dismissed the complaint as against Ocwen Loan because Plaintiffs did not identify a provision of the Mortgage or any other legal basis that would have made a non-party loan servicer liable, [id. at 7]. In their amended

prejudice because loan servicers generally "owe no duty to plaintiffs arising out of mortgage contracts because loan servicers are technically not parties to the mortgage." [ECF No. 12 at 6–7 (quoting McCusker v. Ocwen Loan Servs., LLC, No. 14-cv-13663, 2015 WL 4529986, at *6 (D. Mass. July 27, 2015)]. The Court noted that Plaintiffs had "not identified a provision of the Mortgage of the promissory note" that would make Ocwen Loan liable for breach of contract. [Id. at 7].

Plaintiffs still have not identified any factual or legal basis to hold Ocwen Loan, a non-party loan servicer, liable for breach of contract. All of Plaintiffs' arguments on the issue concern the ASI 2003-W6 Trustee, and not any acts or omissions on the part of Ocwen Loan. [ECF No. 47 at 16–18]. Accordingly, summary judgment is granted as to Count II, breach of contract.

### D. M.G.L. ch. 244, §§ 35B and 35C Against the ASI 2003-W6 Trustee (Count V)

Plaintiffs claim in Count V that the ASI 2003-W6 Trustee violated Massachusetts General Laws Chapter 244, §§ 35B and 35C, [ECF No. 15 at 5], by recording an Affidavit Regarding Compliance with Chapter 244, § 35B on January 14, 2016 that failed to include the January 2009 and April 2010 assignments of the Mortgage, which left Argent Mortgage unable to assign the Mortgage to the ASI 2003-W6 Trustee in September 2015, [id. at 13]. The ASI 2003-W6 Trustee has not filed a subsequent affidavit correcting or clarifying the issue, despite the issue having been raised by this lawsuit. [ECF No. 15 at 13]. Plaintiffs further allege that the ASI 2003-W6 Trustee failed to provide the required notice under Massachusetts General Laws

---

complaint, Plaintiffs abandoned their claim against the ASI 2003-W6 Trustee and only brought a breach of contract claim against Ocwen Loan. [ECF No. 15 at 5].

Chapter 244, § 35B because none of its filings with the Essex County Registry of Deeds were ever provided to counsel. [ECF No. 15 at 14].

First, regarding the affidavit's failure to include that the ASI 2003-W6 Trustee did not hold the Mortgage at the time of foreclosure, Plaintiffs claim that Deutsche Bank National Trust Company was "without standing to foreclose on the Mortgage due to [its] failure to comply with" Chapter 244, § 35. [ECF No. 15 at 10]. Under section 35A, "[t]he mortgagee, or anyone holding thereunder, shall not accelerate the maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of a default" unless it has provided a ninety-day notice to the mortgagor of the mortgagor's right to cure. Mass. Gen. Laws ch. 244, § 35A(a). Ocwen Loan sent Plaintiffs a 150-Day Right to Cure Notice on August 14, 2014, [ECF No. 37-14], which explained that Ocwen Loan was acting as servicer for the ASI 2003-W6 Trustee, [ECF No. 37-14 at 2]. But, the ASI 2003-W6 Trustee had already assigned its interest in the mortgage to the AST 2003-W6 Trustee in April 2010. Ocwen Loan was therefore ostensibly acting as a servicer for an entity that no longer held the mortgage, which would make the alleged right to cure letter ineffective. As a result, Defendants have failed to show that summary judgment is warranted on the issue of the sufficiency of the notice.

Second, under § 35B, before publishing a notice of foreclosure sale, the creditor must "certify compliance with this section in an affidavit based upon a review of the creditor's business records." Mass. Gen. Laws ch. 244, § 35B(f). That affidavit, which is then recorded with the registry of deeds, acts as "conclusive evidence" in favor of a "third party purchaser for value, at or subsequent to the resulting foreclosure sale, that the creditor has fully complied with this section and the mortgagee is entitled to proceed with foreclosure of the subject mortgage

under the power of sale contained in the mortgage . . . ."  Id.  Plaintiffs allege that the ASI 2003-W6 Trustee violated § 35B because it failed to include that Argent Mortgage had no claim to the Mortgage to assign to the ASI 2003-W6 Trustee, because the Mortgage had already been assigned to the AST 2003-W6 Trustee.  [ECF No. 15 at 13].

Defendants have failed to make any argument relating to the allegedly misleading recording of the affidavit.  Instead, Defendants focus on the form of the notice of foreclosure.  [ECF No. 37 at 18–20].  Defendants argue that they fulfilled their notice obligations by sending the notice via first class mail and certified mail.  [Id. at 19].  But, the means of the notice is irrelevant if the notice itself was improper because the alleged mortgagee had no claim to the Mortgage being foreclosed upon.  Because the Defendants have failed to demonstrate that there is no dispute of material fact concerning whether the alleged mortgagee had a claim to the Mortgage, summary judgment is inappropriate on the § 35B claim.

Third, Plaintiffs contend that the ASI 2003-W6 Trustee violated § 35C, which provides that "[a] creditor shall not cause publication of notice of foreclosure, as required under section 14, when the creditor knows or should know that the mortgagee is neither the holder of the mortgage note nor the authorized agent of the note holder."  Mass. Gen. Laws ch. 244, § 35C(b).  Because the ASI 2003-W6 Trustee knew or should have known that it did not hold the Mortgage when it sent the forfeiture notice, Plaintiffs claim that the forfeiture notice publication was inappropriate.  [ECF No. 47 at 9].  Defendants similarly fail to address this claim.  Summary judgment is therefore denied as to the claim under § 35C.

Finally, regarding whether the notice was sufficient, under 35A(b)(ii), "notice shall be deemed to be delivered to the mortgagor . . . when sent by first class mail and certified mail or

similar service by a private carrier to the mortgagor at the mortgagor's address last known to the mortgagee or anyone holding thereunder." Mass. Gen. Laws ch. 244, § 35A(b)(ii). Similarly, under 35B(c), "notice shall be considered delivered to the borrower when sent by first class mail and certified mail or similar service by a private carrier to the borrower at the borrower's address last known to the mortgagee or anyone holding thereunder." Id. § 35B(c).

Defendants argue that they sent a 150-Day Right to Cure Notice and Notice of Default by both first-class mail and certified mail, and provide those notices, as well as the record of their first class mailing. [ECF No. 37 at 8; ECF No. 37-14; ECF No. 37-15]. They likewise sent the notice of acceleration to Plaintiffs and their attorney. [ECF No. 37-18]. Defendants have therefore demonstrated their compliance with the notice procedures. Because Plaintiffs have created a dispute of material fact regarding whether the alleged mortgagee actually had an interest in the Mortgage at the time of the notice, however, summary judgment on the issue is denied.

### E. M.G.L. ch. 93A Against Both Defendants (Count III)

Plaintiffs allege that Defendants have consistently failed to communicate with Plaintiffs' counsel and were deceptive in their failure to acknowledge the January 2009 and April 2010 transfers, which left Argent Mortgage without any claim to the Mortgage, in violation of Chapter 93A. [ECF No. 15 at 14].

Chapter 93A protects consumers from "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Though the determination of what constitutes an unfair trade practice is left to the finder of fact, the Court performs a "legal gate-keeping function." Sullivan v. Bank of New York Mellon Corp., 91 F. Supp. 3d 154, 174

(D. Mass. 2015) (quoting <u>Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.</u>, 552 F.3d 47, 69 (1st Cir. 2009)).  In performing that gate-keeping function, the Court considers "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)."  <u>Vil v. Wells Fargo Home Mort.</u>, No. 17-cv-12121, 2019 WL 569846, at *11 (D. Mass. Feb. 12, 2019) (quoting <u>Sullivan</u>, 91 F. Supp. 3d at 174 (quoting <u>Mass. Eye & Ear Infirmary</u>, 552 F.3d at 69)).  "Massachusetts state court judges have found the 'unfair conduct' element of the statute is fulfilled when debt collectors continue to contact debtors after receiving notification that those debtors are represented by an attorney."  <u>McCusker v. Ocwen Loan Services, LLC</u>, No. 14-cv-13663, 2015 WL 452998, at *3 (D. Mass. July 27, 2015).

Under Chapter 93A, "[a]t least thirty days prior to the filing of any [93A] action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent."  Mass. Gen. Laws ch. 93A § 9(3).  It is "well-settled that plaintiffs must submit a demand letter . . . prior to filing a private action under 93A, § 9(3)."  <u>Ameral v. JPMogran Chase Bank, N.A.</u>, No. 18-cv-12531, 2019 WL 5588905, at *7 (D. Mass. July 25, 2019) (citation omitted).  "The demand letter requirement is not merely a procedural nicety, but, rather, a prerequisite to suit . . . ."  <u>McKenna v. Wells Fargo Bank, N.A.</u>, 693 F.3d 207, 217 (1st Cir. 2012) (quoting <u>Rodi</u>, 389 F.3d at 19).  Plaintiffs bear the burden to prove that they complied with the statutory requirements and sent the letter.  See <u>Entrialgo v. Twin City Dodge, Inc.</u>, 333 N.E. 2d 202, 204 (Mass. 1975).

Defendants deny that Plaintiffs sent a proper or sufficient statutory demand. [ECF No. 37 at 23]. Plaintiffs respond that their prior correspondence with the Defendants is sufficient to support a claim, [ECF No. 47 at 20], but fail to provide examples of that correspondence that would allow the Court to determine whether they were sufficient or not. Because Plaintiffs have failed to meet their burden of demonstrating that they did in fact send such a demand letter in order to bring a claim under 93A, summary judgment is granted on Count III, Chapter 93A.

### F.    Perjury Against Both Defendants (Count VI)

Plaintiffs allege that Defendants committed perjury by claiming ownership of the mortgage in connection with the foreclosure. [ECF No. 15 at 19]. Although not clearly articulated, Plaintiffs appear to allege that Defendants perjured themselves both by filing sworn affidavits that stated that the ASI 2003-W6 Trustee was assigned the mortgage and by the signatories to the transfer being "robo-signatures." [ECF No. 15 at 11–12, 16–17].

> "Robo-signing" is [a] colloquial term . . . used to describe an array of questionable practices banks deployed to perfect their right to foreclosure in the wake of the submortgage crisis, practices that included having bank employees or third-party contractors: (1) execute and acknowledge transfer documents in large quantities within a short period of time, often without the purported assignor's authorization and outside of the presence of a notary certifying the acknowledgement, and (2) swear out affidavits confirming the existence of missing pieces of loan documentation without personal knowledge and often outside the presence of the notary.

Wilson, 744 F.3d at 13 (quoting Reinagel v. Deutsche Bank Nat'l Trust Co., 735 F.3d 220, 223–24 (5th Cir. 2013)).

Defendants argue that Plaintiffs' allegations are insufficient to support a finding of perjury. [ECF No. 37 at 20–21]. Plaintiffs do not respond to Defendants' arguments in their opposition, see generally [ECF No. 47], and have not otherwise provided factual allegations, let

alone actual evidence, that Defendants engaged in perjury through the use of any "robo-signatures," a term that Plaintiffs did not define.  See, e.g., Wilson, 744 F.3d at 14 ("[T]he bare allegation of 'robo-signing' does nothing to undermine the validity of the . . . Assignment . . . .").

Because Plaintiffs have failed to address any of Defendants' arguments concerning Plaintiffs' perjury claim, the Court will treat those arguments as conceded.  See Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 19 (1st Cir. 2009) ("[I]ssues adverted to . . . in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned." (internal quotation marks omitted)); see, e.g., Carey & Assocs., P.A. v. Sheriffs and Counties of Cumberland, 320 F. Supp. 3d 226, 231 (D. Me. 2018) ("[T]he Plaintiffs failed to respond meaningfully to any of Defendants' arguments concerning the remaining counts.  I will not attempt to supply arguments that the Plaintiffs have not articulated.  I find that the Plaintiffs have abandoned the remaining counts in their Complaint and have waived the right to challenge a judgment in favor of the Defendants on those claims."); Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), aff'd 98 F. App'x 8 (D.C. Cir. 2004).  Summary judgment is therefore granted as to Count VI, Plaintiffs' perjury claim.

## V.    CONCLUSION

Accordingly, Defendants' motion for summary judgment, [ECF No. 36], is GRANTED in part and DENIED in part.  Summary Judgment is GRANTED as to Count II (breach of contract), Count III (violation of Mass. Gen. Laws ch. 93A), and Count VI (perjury).  Summary

judgment is <u>DENIED</u> as to Count I (fraud), Count IV (violation of Mass. Gen. Laws ch. 244, § 14), and Count V (violation of Mass. Gen. Laws ch. 244, §§ 35B and 35C).

**SO ORDERED.**

March 5, 2020

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE